**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF ARKANSAS**
**JONESBORO DIVISION**

**SHERRY L. BURNETT**                                                     **PLAINTIFF**

**v.**                            **CASE NO. 3:10CV00131 BSM**

**MICHAEL J. ASTRUE, COMMISSIONER**
**OF SOCIAL SECURITY ADMINISTRATION**                      **DEFENDANT**

## ORDER

Plaintiff Sherry L. Burnett appeals the final decision of the Commissioner of the

Social Security Administration denying her claim for supplemental security income. Both

parties have submitted appeal briefs. [Doc. Nos. 12, 13]. The Commissioner's decision is

affirmed because it is supported by substantial evidence.

## I. INTRODUCTION

Burnett applied for supplemental security income on December 8, 2005, based upon

disability beginning August 1, 2002. Her application was initially denied on April 6, 2006,

and denied upon reconsideration on January 11, 2007. In his July 24, 2008, decision, the

Administrative Law Judge[1] (ALJ) concluded that Burnett had not been under a disability

within the meaning of the Social Security Act because she was capable of performing work

that exists in significant numbers in the state and national economies despite her

impairments. The Appeals Council denied Burnett's request for a review of the ALJ's

decision on May 6, 2010, and she timely commenced this appeal on June 18, 2010.

---

[1]Everet Dail Stiles, Administrative Law Judge.

## II. LEGAL STANDARD

In its judicial review of a decision denying benefits, a district court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. 42 U.S.C. § 405(g); *Slusser v. Astrue*, 557 F.3d 923, 925 (8th Cir. 2009). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Reynolds v. Chater*, 82 F.3d 254, 257 (8th Cir. 1996). In assessing the substantiality of the evidence, evidence that both detracts from the Commissioner's decision as well as evidence that supports it must be considered. *Woolf v. Shalala*, 3 F.3d 1210, 1213 (8th Cir. 1993). The Commissioner's decision, however, will not be reversed merely because substantial evidence would have supported an opposite decision. *Id.*

## III. DISCUSSION

Burnett, a forty-three-year-old female, is seeking benefits due to pain related to fibroids and endometriosis, inability to move three fingers on her right hand, chronic asthma, and depression and anxiety. Burnett has an eleventh grade education and has past work experience as a cashier in convenience stores and as a janitorial services worker. She has not worked since approximately March or April 2005.

The ALJ considered Burnett's impairments by way of the required five-step sequential evaluation process. 20 C.F.R. § 416.920. At step one, he found that Burnett had not engaged in substantial gainful activity since the application date. At step two, the ALJ

2

found that Burnett's depression, history of anemia, miscellaneous aches and pains, and hand injury constituted severe impairments. He did not, however, consider Burnett's asthma, fibroids, or endometriosis to be severe impairments. At step three, the ALJ found that none of her impairments equaled a listed impairment under 20 C.F.R. §§ 416.920(d), 416.925, 416.926. He also found that Burnett had the residual functional capacity to perform light work as defined in 20 C.F.R. § 416.967(b), so long as that work was simple, routine, unskilled, required only occasional interaction with others, and did not require extensive gripping with her right hand. At step four, the ALJ received testimony from the vocational expert that Burnett could likely perform her past work as a convenience store cashier. Nevertheless, he proceeded to step five under the assumption that she could not perform any past relevant work. At step five, the ALJ found, based upon Burnett's age, education, work experience, and residual functional capacity, that she could perform representative occupations with a light exertional level, such as cashier, which exist in significant numbers in the local and national economies. For this reason, the ALJ found that Burnett was not disabled since December 8, 2005.

On appeal, Burnett asserts that the ALJ's findings are not supported by the record and that the Appeals Council failed to consider new evidence showing that she was disabled. The Commissioner maintains that substantial evidence supports the ALJ's findings and that the Appeals Council properly considered the evidence of record.

A.     Substantial Evidence in the Record

The Commissioner's decision is supported by substantial evidence.

*1. Listing argument*

Burnett briefly argues that, at step three, the ALJ incorrectly found that her limitations in social functioning, daily living activities, and concentration, persistence, or pace were not "marked." The Commissioner observes that this argument is skeletal, perfunctory, and should be treated as waived. This doctrine is frequently recognized in social security cases and is based on the principle that the plaintiff-appellant cannot merely "mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones." *United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990), *cert. denied*, 494 U.S. 1082 (1992). *See also Vandenboom v. Barnhart*, 421 F.3d 745, 750 (8th Cir. 2005). Burnett fails to explain which listing was met by these "marked" limitations and does not cite to regulations or case law supporting her contention. Therefore, for the purposes of this appeal, Burnett's listing argument is abandoned.

*2. Credibility*

Burnett also asserts that the ALJ failed to consider the amount of pain she experiences and the side effects of the medications she uses. In his findings of fact and conclusions of law, the ALJ expressly discussed those symptoms and found them to be credibly related to her medically determinable impairments. Based on Burnett's limited treatment history and the objective medical evidence, however, the ALJ did not fully credit Burnett's testimony

as to the intensity, persistence, and limiting effects of the symptoms.

The ALJ's credibility analysis was proper. He made express credibility findings and gave his reasons for discrediting the testimony. *See Shelton v. Chater*, 87 F.3d 992, 995 (8th Cir.1996). Indeed, a lack of regular and consistent treatment contradicts allegations of disability. *Gwathney v. Chater*, 104 F.3d 1043, 1045 (8th Cir. 1997). Moreover, such allegations are undermined by the absence of evidence showing that Burnett's physicians placed significant limitations on her activities. *See Melton v. Apfel*, 181 F.3d 939, 941 (8th Cir. 1999). Therefore, the ALJ's credibility findings will not be disturbed. *See Reed v. Sullivan*, 988 F.2d 812, 815 (8th Cir. 1993).

### 3. Residual functional capacity

Burnett also submits that the ALJ improperly determined her residual functional capacity. Pursuant to 20 C.F.R. § 416.945, the ALJ must consider all of the relevant evidence in the record and resolve conflicts among the medical opinion evidence. *Bentley v. Shalala*, 52 F.3d 784, 785 (8th Cir. 1995). In his decision denying benefits, the ALJ discussed all the medical and nonmedical evidence and found that Burnett was capable of performing simple, routine, unskilled work in a low-stress environment that required only limited interaction with others and limited gripping with her right hand. Burnett specifically argues that these limitations do not adequately account for her depression and hand injury. On the contrary, there is substantial evidence in the record that supports the ALJ's decision not to add any further limitations.

a.      Depression

To begin, depression is not necessarily disabling, particularly where it is situational in character. *See Dunahoo v. Apfel*, 241 F.3d 1033, 1039-40 (8th Cir. 2001). This was the diagnosis provided by Dr. Spellman in his mental status and adaptive functioning report dated May 9, 2005. Also, in her benefits application, Burnett specifically noted that she did not have problems getting along with others. Most importantly, however, Burnett did not consistently seek treatment from a mental health care provider. Therefore, the accommodations provided by the ALJ in his residual functional capacity evaluation adequately address Burnett's situational depression.

b.      Hand injury

There is some dispute as to how Burnett received the underlying injury. During a physician's visit, Burnett stated she was "struck with a butcher knife," but according to her own testimony, Burnett injured herself while cutting a fish. The record shows that Burnett visited the emergency room on April 12, 2006. During that visit, Burnett indicated that she had only mild pain. The examination notes indicate that she had a normal hand and wrist with intact sensation, normal motor functioning, and normal tendon function. Her treatment consisted of a betadine and peroxide soak, a tetanus shot, and neosporin ointment. She did not receive sutures, and was discharged with prescriptions for an antibiotic and pain medicine.

Although Burnett experienced some finger pain and cramping during May and June

2006, there is no record of consistent complaints of hand problems throughout the relevant period. At her hearing, Burnett displayed her hand to the ALJ. The pictures indicate that three of Burnett's fingers are extended straight out in what appears to be a fixed position. Based on the medical evidence in the record, his visual inspection of her hand, and Burnett's testimony, the ALJ found that Burnett would have limitations gripping with her right hand. This limitation was included in the hypothetical posed to the vocational expert.

Burnett visited a hand specialist shortly after the hearing. The specialist, Dr. Meredith, conducted a physical exam and took x-rays of Burnett's hand. His report found a number of issues including hyperextension with no active flexion of the ulnar three fingers, low grade chronic reflex sympathetic dystrophy, and numbness and hypersenstivity in certain portions of her fingers. His report also notes the presence of laceration scars and states that Burnett's x-rays were unremarkable.

Although the ALJ did not have the benefit of Dr. Meredith's report at the time he rendered his decision, it does not provide a basis for overturning the Commissioner's ultimate finding that Burnett was not disabled. This is because the vocational expert testified that, so long as Burnett could use her right hand as an assistive device, she could perform unskilled cashier work. Dr. Meredith's report indicates that Burnett can use her hand as an assistive device. Therefore, the ALJ's finding that Burnett was capable of performing work that exists in significant numbers in the local and national economies is affirmed.

B.    <u>New Evidence Before the Appeals Council</u>

When new and material evidence is submitted to the Appeals Council, the Appeals Council is required to "evaluate the entire record including the new and material evidence submitted if it relates to the period on or before the date of the administrative law judge hearing decision. It will then review the case if it finds that the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record." 20 C.F.R. § 416.1470(b). This is somewhat of an anachronism, because the "administrative record" will include the newly submitted evidence even though the evidence was not originally included in the ALJ's record. *See Browning v. Sullivan*, 958 F.2d 817, 823 n.4 (8th Cir. 1992).

If the Appeals Council does not consider such evidence, the case should be remanded. *See Williams v. Sullivan*, 905 F.2d 214, 217 (8th Cir. 1990). If the Appeals Council considers the new evidence but declines to review the case, however, the district court must determine whether the administration record on the whole, including the new evidence, supports the ALJ's decision. *Browning*, 958 F.2d at 823.

Here, the Appeals Council received and considered Dr. Meredith's report, but declined to review Burnett's case. As discussed above, although that report indicates that Burnett does not have complete use of her right hand, it does not suggest that Burnett cannot use the hand as an assistive device. Therefore, the entire administrative record, including Dr. Meredith's report, still supports the ALJ's decision. For that reason, Burnett's argument that

the Appeals Council improperly denied her request for review is rejected.

## IV. CONCLUSION

The Commissioner's decision is hereby affirmed.

IT IS SO ORDERED this 8th day of August 2011.


UNITED STATES DISTRICT JUDGE